## In re Anonymous No. 28 D.B. 77

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania

HENRY, *Board Member,* December 1, 1978— Pursuant to Rule 208(d) of the Rules of Disciplinary Enforcement (rules), the Disciplinary Board of the Supreme Court of Pennsylvania (board), submits its findings and recommendations to your honorable court with respect to the above petition for discipline.

## I. HISTORY OF PROCEEDINGS

This matter was commenced by a petition for discipline filed on July 7, 1977. The petition set forth five separate charges against respondent, all alleging neglect of legal matters entrusted to him in violation of the several disciplinary rules relating to such misconduct. No answer was filed on behalf of respondent and the matter was referred to hearing committee [ ], [ ], Esq., chairman, [ ], Esq. and [ ], Esq. Pursuant to notice given, the hearing panel met at 9:00 a.m. on September 26, 1977. At that time, neither [respondent] nor anyone representing him was present. Respondent had attempted to obtain a continuance earlier in the preceding week which had been denied by the chairman of this board. Disciplinary counsel was later notified that respondent would not be available because he was scheduled to try a rape case on September 26. While the hearing committee was reviewing the situation, a telephone call was received from [A], Esq. He advised that he intended to represent [respondent] and arrived at the hearing shortly thereafter. Mr. [A] stated that he had not had adequate time to become familiar with the charges or the facts and that he was concerned about re-

spondent's physical condition insofar as it might affect his ability to defend this matter or to continue to practice law. Shortly thereafter, respondent arrived on the scene and indicated that he concurred in the motion made by Mr. [A] on his behalf.

With the consent of the chairman of the disciplinary board, the matter was continued to October 10 with the request that respondent file any motion relating to his physical condition together with medical records by October 3. No such motions were filed. On October 7, 1977, Mr. [A] contacted the chairman of the hearing committee and stated that [respondent] had been sick since October 4 and asked for a further continuance. The matter was continued to October 17, 1977, but Mr. [A] was advised that the panel should be presented with a report by [respondent's] physician with respect to his medical condition. Notwithstanding the representations and requests of Mr. [A], [respondent] arrived at the meeting place for the hearing scheduled for October 10 prepared to proceed. At that time, he advised disciplinary counsel that he had tried a case on September 27, 28 and 29. At the hearing on October 17, 1977, Mr. [A] was present but respondent was not. The committee received the written report of Dr. [B], dated October 6, 1977, and adjourned the hearing to October 24, 1977. The testimony of Dr. [B] was taken on October 24, 1977, as well as the initial testimony on the charges.

The hearing was adjourned to later dates in November and December but these were cancelled because of Mr. [A's] hospitalization and initially rescheduled for January 4 and January 12, 1978, and again rescheduled for February 21 and 22 for the same reason. Respondent was, however, notified that, because of the time that had elapsed, he should secure other counsel if Mr. [A] would not

be available at the future dates. It was again necessary to reschedule the hearings for March 7 and 8, 1978, because of a trial conflict by one of the hearing committee members. Notice of the change was sent on February 21, 1978.

When the hearing panel convened on March 7 at 10:00 a.m., neither respondent nor his counsel was present. Mr. [A] was ultimately contacted and advised he was sending over a "busy slip." A letter was also received from Mr. [A] advising that [respondent] had been sick from the beginning of the year and requesting a continuance of the hearings. The panel declined to grant the extension and notified [respondent] and his counsel that the hearing would proceed at 2:00 p.m. that afternoon. The hearings were held as scheduled without the presence of [respondent] or Mr. [A]. On August 18, 1978, the hearing committee filed its report recommending a suspension of three years. No exceptions with respect to the report were filed within the prescribed time and the matter was referred to this board for review and recommendation. This board concurs in the recommendation of the hearing committee for the reasons set forth below.

## II. DISCUSSION

At the time of the hearing, two of the complainants, upon whose testimony the charges depended, reported that they would not be available to testify. As a result, no evidence was presented on said charges and they were dropped. With respect to the remaining three charges, the findings of fact and conclusions of law of the hearing committee are supported by the evidence and are adopted by this board as its own.

## CHARGE II—[C]

Mrs. [C] was a resident of [ ], Pa. Her husband died on October 30, 1973. Prior to his death, he had executed a deed that had been prepared by a notary public conveying property owned by him to himself and his wife. Mr. and Mrs. [C] took the deed for filing but were advised that the document could not be recorded because of a mistake in the execution. Mr. and Mrs. [C] intended to have the error corrected and recorded at a convenient time but this had not been accomplished by the time of Mr. [C's] demise. After her husband's death, Mrs. [C] contacted [A], Esq. to represent her with respect to her husband's estate. Mr. [A] turned the matter over to [respondent], who was paid a retainer fee. [Respondent] filed an election to take against the will on behalf of Mrs. [C]. In addition, she delivered to him the unrecorded deed to be used in an effort to establish that the document was adequate to convey title to her notwithstanding the fact that it was not in proper form for recording.

Mrs. [C] testified that subsequently she had difficulty obtaining any information with respect to the progress of her claim from [respondent]. He did not respond to her inquiries and, when he did, was frequently arrogant. On one occasion, Mrs. [C] was told that [respondent] could be found at a nearby tavern and when she located him there, he declined to discuss her matters with her, telling her that he did not "feel like talking business."

In September of 1975, Mrs. [C] retained [D], Esq. to represent her interests. A letter was sent to [respondent] advising him of the change in attorneys and requesting that he forward all papers to Mr. [D].

Mr. [D's] efforts to contact [respondent] by telephone failed and he finally wrote to him in December of 1975 demanding the file be turned over to him and stating that he was recommending that Mrs. [C] consult disciplinary counsel. Disciplinary counsel also advised respondent in writing that his failure to send the documents to Mr. [D] was improper. Over two months later, on February 16, 1976, [respondent] wrote to disciplinary counsel stating that he would turn the documents over to Mrs. [C]. As of the time of the hearings in 1978, [respondent] still had not delivered the documents, including the deed, to Mr. [D]. Without the deed, Mrs. [C] has been unable to assert any claim based upon it against her husband's estate although there would appear to be a substantial basis for a valid claim in this regard.

The hearing committee found that [respondent's] actions constituted a "callous indifference or disregard of the interests of Mrs. [C] in an inexcusable fashion" and violated Disciplinary Rules 6-101(A)(3) (neglect of a legal matter entrusted to him), 7-101(A)(1) (intentionally failing to seek the lawful objectives of a client), 7-101(A)(2) (intentionally failing to carry out a contract of employment), 7-101(A)(3) (intentionally prejudicing and damaging his client during the course of his representation), and 9-102(B)(4) (failing to promptly deliver to his client all the property the client is entitled to receive).

## CHARGE IV—[E]

On July 24, 1975, Mr. [E] paid respondent $250 on account of a retainer to obtain a divorce for him. It

was understood at that time that Mr. [E] was to pay an additional $300 before the proceedings could be commenced. On June 14, 1976, Mr. [E] advised [respondent] that he was in financial difficulty and would like to have the $250 returned. [Respondent] had not done anything up to that time but refused to return the money and told Mr. [E] that he would proceed with the divorce upon payment of the balance. The next day, Mr. [E] paid the additional $300. A month later, Mr. [E] began telephoning respondent at his office to determine the status of the proceedings. He was never able to talk to [respondent], however, but was told his calls would be returned. They never were. Finally, in the fall of that year, Mr. [E] requested that the fee be refunded. No answer was received to this request. Thereupon, Mr. [E] contacted a number of agencies, including the office of disciplinary counsel, which sent written inquiries to [respondent] concerning [E's] request. No response was received. Finally, Mr. [E] brought an action in the [ ] Municipal Court, obtained a judgment and executed on the same but, because of property claims filed, was unable to collect the amount of his judgment and had not received any portion of the fee as of the time of the hearing. Subsequently, [E] engaged the services of another attorney who commenced the divorce action in February of 1977 and obtained a final decree in November of that year.

The hearing committee concluded that respondent's actions violated Disciplinary Rules 6-101(A)(3) (neglect of a legal matter entrusted to him), 7-101(A)(1) (intentionally failing to seek the lawful objectives of a client), 7-101(A)(2) (intentionally failing to carry out a contract of employment), and 7-101(A)(3) (intentionally prejudicing

and damaging his client in the course of his representation).

## CHARGE V—[F]

In the fall of 1974, Mrs. [F] was referred by Mr. [A] to respondent to represent her with respect to support proceedings against her husband and to represent her in a claim against the [G] Hotel for assault and false arrest. Retainer fees were paid to respondent at that time.

[Respondent] never took any action with respect to the claim against the [G] Corporation and as a result, the statute of limitations barred any suit. Mrs. [F] retained another attorney but [respondent] refused to respond to his inquiries. Ultimately, a malpractice action was commenced on behalf of Mrs. [F] against [respondent] resulting in a default judgment in the amount of $2,500. No payment has been made on this judgment and it would appear that respondent has no assets that would form the basis for the collection of the same.

Mrs. [F's] husband filed an action in divorce and the papers were forwarded to [respondent] in 1975. Respondent told Mrs. [F] that she had nothing to worry about. Later, Mrs. [F] was advised by a friend that her husband had been granted a divorce decree. A check of the courthouse records confirmed this fact. When respondent was contacted, he first told Mrs. [F] that the master's proceedings had not been concluded but later admitted that he had never done anything. He then told her that an appeal could be filed in 60 days. When Mrs. [F] told [respondent] that her understanding was that the period was 30 days, he then took the position that the decree could not go through because he had not

received notice and he would straighten it out with a letter. These events occurred in January of 1976. Respondent, however, did nothing and Mrs. [F] was unable to get in contact with him thereafter. Subsequently, she engaged another attorney and [respondent's] employment was terminated.

Mrs. [F] and her husband owned several parcels of real estate and she had a substantial interest in negotiating a property settlement with her husband prior to the conclusion of the divorce. Respondent's failure to act eliminated the possibility of any favorable negotiations to her extreme prejudice. The hearing committee concluded that respondent's action violated Disciplinary Rules 6-101(A)(3) (neglect of legal matters entrusted to him), 7-101(A)(2) (intentionally failing to carry out a contract of employment) and, 7-101(A)(3) (intentionally prejudicing and damaging his clients in the course of his representation).

The testimony establishes that in the course of the representation of three separate clients, [respondent] accepted fees but did little or nothing thereafter. Mr. [E] has been unable to obtain the repayment of his fees even following court action. Mrs. [C] and Mrs. [F] have not only been unable to receive repayments of the fees that were paid, but also were very substantially prejudiced as a result of [respondent's] failure to act. Mrs. [C] has been prevented from asserting what would appear to be a valid claim based upon a deed which was turned over to [respondent] and which he has not returned. Mrs. [F] lost the opportunity to negotiate a property settlement as the result of [respondent's] failure to defend against her husband's divorce action, notwithstanding the fact that he assured Mrs. [F] that he would do so. He later lied to her with respect to the status of the proceedings and gave her improper

information which he probably knew was not true at the time in an effort to cover up the situation. Because he failed to file a timely complaint against the [G] Corporation, she lost her right to proceed and was reduced to obtaining a judgment against [respondent] that would appear to be uncollectible.

The medical testimony that was produced indicated that [respondent] was able to appear and defend himself in these proceedings. His own activities during the period confirm this. The hearing committee was unable to determine whether or not respondent's physical condition may have affected his ability to function as an attorney as a possible mitigating factor in arriving at the type of discipline imposed as a result of an objection by respondent's counsel to this line of inquiry.

It must be noted that two previous disciplinary actions were commenced against [respondent] to numbers 6 D.B. 74 and 32 D.B. 74. These cases involved respondent's conviction for failure to file income tax returns and neglect of the affairs of three clients in a manner very similar to the instant charges. The petitions for discipline in those cases were filed in February and September of 1974. The hearings were held in 1974 and 1975 and reports recommending public censure and a three month suspension were filed in August and September of 1975. The two matters were consolidated for consideration by this board and on February 20, 1976, a report was filed with your honorable court recommending suspension of six months. That report set forth prior difficulties by [respondent] with the Committee of Censors of the [ ] Bar Association extending back to 1964. In that report we stated:

"Were it not for the respondent's age, the board might well consider a more severe form of disci-

pline. In view of the facts, however, that the respondent is 64 years of age, it is the board's recommendation that he should be suspended from practice for six months. During that time, it is hoped that the respondent will reflect upon the manner in which he has conducted his practice in the past and come to a decision as to whether or not he is willing to accept the burden of the high standard of conduct the practice of law requires. If and when he decides that he is willing to comply with the standards set forth in the Code of Professional Responsibility, he can file his petition for reinstatement."

No action has been taken by your honorable court with respect to that report as of this date.

The testimony establishes that respondent did not merely neglect matters entrusted to him by his clients, but he showed a callous disregard for their interests. It is difficult to conceive how Mrs. [C], Mrs. [F] and Mr. [E] and their friends familiar with their treatment will ever be convinced that the law is an honorable profession. The enormity of [respondent's] misconduct is compounded by the fact that it took place while proceedings were under way and concluded involving parallel unethical activity. It continued even when he was aware of the report of this board recommending suspension and setting forth the attitude and conduct that would be necessary for him to continue to practice law as set forth above. Instead of endeavoring to conform with these requirements while the decision by your honorable court in his previous cases was pending, he persisted in the same regrettable course of conduct. [Respondent] has forfeited any consideration that might have been extended to him based upon his past service, age and physical condition.

Nevertheless, the majority of this board is still willing to give some weight to these factors and is recommending a period of suspension rather than disbarment. To permit [respondent] to continue to practice law would create a very real danger to the public, our judicial system, and the legal profession. His long history of unprofessional conduct satisfies us that a short period of suspension would not be adequate to assure reformed behavior. We, therefore, recommend that [respondent] be promptly suspended from the practice of law for a period of three years before any further harm occurs.

## III. RECOMMENDATION

For the reasons set forth above, the disciplinary board recommends to your honorable court that respondent, [  ], be suspended for a period of three years following the suspension of six months previously recommended to your honorable court in the matters to numbers 6 D.B. 74 and 32 D.B. 74 with the right to apply for reinstatement pursuant to Rule 218 six months prior to the end of said period of suspension and that respondent shall comply with all of the provisions of Rule 217 of the Rules of Disciplinary Enforcement and sections 91.91-97 of the Rules of Disciplinary Board.

Messrs. Reath and McDonnell dissented and would recommend disbarment.

Mr. Anderson did not participate in the adjudication.

## DISSENTING REPORT

REATH, *Board Member,* December 1, 1978—I dissent from any recommendation involving this

respondent that does not immediately totally disqualify and prevent him from further holding himself out to the public as possessing the legal competency and high standards of professionalism and integrity which the public has every right to believe is the hallmark of any lawyer vested, as our profession is, by your honorable court with the exclusive privilege to practice law in this Commonwealth.

On February 20, 1976, over 20 months ago, this board, in an extraordinary act of compassion, eschewed recommending disbarment in favor of a six month suspension.[1] That recommendation has never been acted upon by this court.

Since that report, one more petition for discipline, embracing five additional incidents, has been processed, resulting in the instant report and recommendation for discipline. Any doubt as to now recommending disbarment should be resolved in favor of disbarment, considering the extraordinary litany of respondent's prior professional transgressions and misconduct, including:

Conviction in 1972 of a plea of no defense to charges of failure to file income tax returns for the years 1967 and 1968 (involving gross income of approximately $19,000 for each year);

---

1. "Were it not for the respondent's age, the board might well consider a more severe form of discipline. In view of the fact, however, that the respondent is sixty-four years of age, it is the board's recommendation that he should be suspended from practice for six months. During that time it is hoped that the respondent will reflect upon the manner in which he has conducted his practice in the past and come to a decision as to whether or not he is willing to accept the burden of the high standard of conduct the practice of law requires." (2/20/76 Report, p. 12).

Gross neglect of a divorce matter which delayed his client's securing her divorce by over 2½ years because, for that period of time, he failed to give the complaint to the sheriff for service;

Gross neglect in processing a client's civil claim against a department store for false arrest, wherein he lied to his client in falsely stating he had not received settlement drafts from the insurance company—whereas he had; and in failing,, as of 1974, two years after the drafts were sent to him, to turn them over to his client;

Inexcusable delay and neglect in the handling of an uncontested adoption matter which delayed and prevented any court action for at least two years— and possibly longer. During this period, respondent ignored not only the client's calls and requests for progress reports, but failed to appear, as directed, before a judge of the court of common pleas, and thereafter ignored the judge's letters and proffer of assistance to assist respondent in curing deficiencies in the court papers he had filed;

A long prior record of professional misconduct, dating back over 11 years, regarding matters before the Committee of Censors of the [   ] Bar Association, which included: 1. December 18, 1964— Formal censure by the committee for neglect and failure to communicate with a client regarding a divorce matter; 2. December 29, 1966—A private rebuke by the court involving a number of similar complaints; 3. December 27, 1968—An order of the court finding that respondent had commingled client and personal funds and directing the committee to work with respondent to develop a program to eliminate this practice; 4. June 8, 1970— An order of the court finding that violations were continuing and that respondent had failed to mend

his ways; 5. March 8, 1972—An order from the court relieving respondent of any further duty to report to the Committee of Censors.

All of the above-recited materials are fully documented in this board's report and recommendations of February 20, 1976, that was filed with this court on the same date. The failure of this court to act on this matter has been a matter of grave concern to our board—and has, since April 26, 1977, been the subject of periodic and regular reports to this court, pointing out that this matter is open and undecided and that respondent is still practicing law.

Meanwhile, since February, 1976, this respondent has been permitted, by the court's failure to act, to hold himself out to the unsuspecting general public as continuing to merit the court's approval as a fully competent and dependable lawyer to handle professional matters entrusted to him by unsuspecting members of the general public.

One can only speculate how many other clients have entrusted money or important personal affairs to respondent since that date, in addition to [Mr. E], one of the complainants in Charge IV of the instant proceeding:[2]

On June 15, 1976, Mr. [E] paid respondent an additional $300 to proceed with a divorce, as to which respondent had previously received $250

---

2. See also claim of Bishop [H], in Charge III, p. 6 of complaint (Tab 2), whose claim was not heard because the witness refused to testify. According to the complaint, Bishop [H] in May of 1976 paid respondent $250 to have a judgment removed against his church. The petition to strike the judgment was refused when respondent failed to appear, and the church property was listed for sheriff's sale.

and instructions to proceed some 12 months earlier. The rest of the dismal story on the travails of this hapless client are detailed in the findings of the hearing committee in the instant record. As of February 1977, he had to engage the services of another attorney, who finally got the divorce on November 30, 1977, some two years and five months after he paid respondent $250.

The familiar, and fully expected, pattern of incompetence, delay, failing to communicate with clients, lies and deceit to cover up his transgressions, and callous indifference to the anguish and harm, both mental and financial, visited on innocent and unsuspecting clients is a recurring theme in the present cases, which involve the three clients who testified and appeared against him—as well as the two additional cases where the charges were not proved because the clients refused to testify.

The hearing committee aptly summarized its findings as to the three cases it heard, when it stated: "The extent of respondent's neglect in all of these matters is so extreme as to warrant the conclusion that his actions in this regard must be considered to have been deliberate and intentional."

If immediate disbarment, together with the procedures under Rule 217(f) to appoint a "conservator" to forthwith unravel the tangled web of respondent's affairs, is not the proper remedy in this case, then I submit, with all earnest seriousness, we might as well fold up the entire disciplinary process and go home.

## ORDER

EAGEN, *C.J.*, And now, January 16, 1979, the recommendations of the disciplinary board of the Supreme Court at the above numbers are accepted;

and it is ordered, that the said [respondent], be, and he is herewith suspended for a period of six months in the matters to numbers 6 D.B. 74 and 32 D.B. 74, followed by a period of three years in the matter to number 28 D.B. 77, with the right to apply for reinstatement pursuant to Rule 218 of the Rules of Disciplinary Enforcement, six months prior to the end of said period of suspension and that [respondent] shall comply with all of the provisions of Rule 217 of the Rules of Disciplinary Enforcement and sections 91.91-97 of the Rules of the Disciplinary Board.

Mr. Justice Nix did not participate in the consideration or decision of this matter.

Mr. Justice Larsen would impose disbarment.